**KLOSTER SPEEDSTEEL AB,
Speedsteel of New Jersey,
Inc., Appellants,**

**Stora Kopparbergs Berg Slags AB, A Swedish Corp., and Uddeholms AB, A Swedish Corp., et al., Appellants/Cross-Appellees**

v.

**CRUCIBLE INC., etc., and Crucible Materials Corp., etc., Appellees/Cross-Appellants.**

**Appeal Nos. 85–2174, 85–2214, 85–2215 and 85–2274.**

United States Court of Appeals, Federal Circuit.

June 11, 1986.

As Amended on Granting of Rehearings Aug. 15, 1986.

Francis J. Hone, of Brumbaugh, Graves, Donohue & Raymond, New York City, ar-

gued for appellants Stora, etc. With him on brief was Richard S. Clark, of Brumbaugh, Graves, Donohue & Raymond.

Wayne A. Cross, of New York City, argued for appellants Kloster, etc. With him on the brief were William Dunnegan, of Reboul, MacMurray, Hewitt, Maynard & Kristol, and Arthur D. Gray, Stuart J. Sinder, William J. McNichol and Scott A. Wisser, of Kenyon & Kenyon, of counsel.

Ford F. Farabow, Jr., of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for appellees Crucible, etc. With him on the brief were Michael C. Elmer and Allen M. Sokal, of Finnegan, Henderson, Farabow, Garrett & Dunner.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and NEWMAN, Circuit Judge.

MARKEY, Chief Judge.

Consolidated appeals from a judgment of the United States District Court for the Western District of Pennsylvania holding claim 30 of U.S. Patent No. 3,746,518 ('518 patent) and claim 4 of U.S. Patent No. 3,561,934 ('934 patent) valid and infringed. *Crucible, Inc. v. Stora Kopparbergs Bergslags AB,* 594 F.Supp. 1249, 226 USPQ 36 (W.D.Pa.1984). We affirm in part and remand in part.

*Background*

(1) *Proceedings in the District Court*

In 1974, Crucible, Inc. (Crucible), assignee of the '518 patent (issued July 17, 1973 to Frederick C. Holtz, Jr., on an application filed February 26, 1965), and of the '934 patent (issued February 9, 1971 to Gary Steven on an application filed September 11, 1967), charged Stora Kopparbergs Bergslags AB and Stora Kopparberg Corp. (Stora) with patent infringement in manufacturing and selling "ASP" steel products. On July 25, 1974, Stora filed a declaratory judgment action in the United States District Court for the District of New Jersey alleging patent invalidity, non-infringement, and violation of the antitrust laws.

On October 4, 1974, Crucible[1] sued Stora[2] in the Western District of Pennsylvania, where the district court consolidated the suits and severed the antitrust and damage issues for later trial.

In 1976, a proceeding was initiated in the Patent and Trademark Office (PTO) on Stora's protest against a continuing application related to the '518 patent. Crucible's failure to cite a reference during prosecution of the application that resulted in the '518 patent was reviewed in that proceeding.

The district court tried the case without a jury on 18 dates between September 13 and October 6, 1982, filed an opinion on September 19, 1984, and entered judgment for Crucible on October 11, 1984. The court held that: (1) claim 30 of the '518 patent had not been proved invalid under 35 U.S.C. §§ 102, 103, or 112, and was infringed by Stora; (2) claim 4 of the '934 patent had not been proved invalid under 35 U.S.C. §§ 102 or 103;[3] (3) Stora had waived its defense that the patents were unenforceable because of inequitable conduct; (4) Crucible was not entitled to increased damages; and (5) no litigant was entitled to attorney fees. In its October 11, 1984 order, the court permanently enjoined Stora and its "successors in interest and assigns" from making infringing ASP steel products.

On October 31, 1982, the 25th day after trial and almost two years before the court's decision, Fagersta AB, a Swedish corporation, and Stora formed Kloster Speedsteel AB and its subsidiary, Speedsteel of New Jersey, Inc. (Kloster), and Kloster purchased the facility Stora used to make the infringing products.

In a March 12, 1985 order disposing of post-trial motions, the district court reviewed its decision and opinion in light of arguments presented by Stora (and repeated by Stora before us). The court: (1) denied a motion by Kloster to modify the injunction by excluding Kloster or by deleting "successors in interest and assigns"; (2) refused to stay the injunction pending appeal; (3) amended the October 11, 1984 order to enjoin Stora from infringing the specifically upheld claims; and (4) anticipating an appeal, amended its opinion to enter a finding that undisclosed art was not more material than that considered by the examiner, and that, if Stora had not waived its unenforceability defense, it had in any event failed to establish inequitable conduct before the PTO. 226 USPQ 842 (W.D. Pa.1985).

Stora in Appeal No. 85–2215 and Kloster in Appeal Nos. 85–2174/2274[4] contest the determination that Stora had not shown the claims invalid,[5] and Kloster contests the refusal to modify the injunction. In Appeal No. 85–2214, Crucible cross-appeals from the portion of the judgment refusing to find willful infringement and denying increased damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285. On stipulated motion, this court consolidated the appeals on June 14, 1985.[6]

### (2) The Technology

The present field of technology is that of metal alloy compositions. The focus at tri-

---

1. Crucible Materials Corp., the successor in interest of Crucible, Inc., was added as a plaintiff in an order dated October 11, 1984.

2. In 1977, Uddeholms AB purchased the division of Stora that manufactured ASP steel. Uddeholms and its American marketing subsidiary, Uddeholm Steel Corp., now called Uddeholm Corp., were joined as defendants and are included here under "Stora".

3. Stora admitted infringement of claim 4 of the '934 patent. 594 F.Supp. at 1251, 226 USPQ at 37.

4. The district court, apparently through inadvertence, left "successor in interest and assigns" out of its March 12, 1985 injunction order from which Kloster appealed on March 21, 1985 (85–2174). The court included the phrase in its injunction order dated March 25, 1985, from which Kloster also appeals (85–2274). See Fed. R.App.P. 4(a)(4).

5. The issues of validity under 35 U.S.C. § 112 and infringement are not contested on appeal.

6. On November 4, 1985, this court dismissed the appeal of Fagersta AB in response to a stipulated motion of all parties.

al was on "high speed" tool steels used to make metal cutting tools. High speed tool steels must possess properties of grindability, heat resistance, hardness, toughness, and dimensional stability. Those properties minimize tool replacement and resulting production line shut-downs.

High speed tool steels generally contain relatively large amounts of carbon and significant amounts of alloying elements that form metallic carbides distributed throughout the microstructure of the steel. Conventionally cast high speed tool steels have a microstructure characterized by an inhomogeneous distribution of coarse carbides, i.e., striations and stringers resulting primarily from the time required to cool the ingot. That carbide distribution adversely affects grindability and cutting efficiency.

Prior art workers investigated powdered metallurgical techniques. Those workers initially produced a particulate alloy, preferably by atomization, and then applied heat and pressure to consolidate the resulting powders into an integral product.

To achieve substantially full density, workers had to compact the powders at elevated temperatures. High temperatures, however, cause increased rate of carbide growth and agglomeration and loss of carbon. Low temperatures, on the other hand, render the powder insufficiently malleable for suitable densification. Thus, prior art workers had to choose between high densification and fine carbide size. The invention disclosed in the '518 patent made it possible for the first time to maintain fine, uniformly dispersed carbides while achieving a fully dense product having satisfactory interparticle bonding.

### (3) The Claims in Suit

Claim 30 of the '518 patent reads:

A consolidated integral alloy body which is substantially fully dense formed of a hot worked supersaturated solid solution of an inherently alloying composition, said alloy body consisting essentially of a continuous metallurgical phase with a uniformly disbursed hard phase of minute dispersed hard phase particle sizes that are substantially entirely less than three microns in maximum dimension, said alloying composition consisting essentially by weight from about .5% to about 5% carbon at least 10% of a hard phased forming element selected from the group consisting of Cr, W, Mo, Ti, Ta, Cb, Zr, Hf, V, and Al, and mixtures thereof, and the remainder base metal and incidental impurities, wherein said base metal is selected from the group consisting of cobalt, iron and nickel, and wherein the total amount of base metal is at least 30%.

Claim 4 of the '934 patent reads:

An article of manufacture as defined in claim 2, in the form of a hob for use in milling applications.

On May 2, 1978, Crucible disclaimed, under 35 U.S.C. § 253, claim 1 and its dependent claim 2 of the '934 patent. Because it depends from and thus includes all limitations of claims 1 and 2, however, claim 4 properly reads:

As an article of manufacture, a metal body constructed of compacted particles of a high speed tool or die steel composition containing a metal component capable of reacting with carbon to form carbides, said reactive metal component being at least one metal selected from the group consisting of titanium, vanadium, molybdenum, zirconium, columbium, tungsten and tantalum each of said particles having carbides of said reactive metal substantially evenly dispersed throughout, said body having a hardness of at least about 58 $R_c$ and being characterized by size change uniformity upon austenitising, quenching and tempering, the composition of said metal body [consisting] of, in percent, 0.80 to 3.00 carbon, up to 2 manganese, up to 1 silicon, up to 0.5 sulfur, up to 18.0 tungsten, up to 10.0 chromium, up to 12 molybdenum, up to 5 vanadium, up to 12 cobalt and balance iron, with tungsten + molybdenum + chromium + vanadium being equal to at least 10 percent, [said metal body being] in the form of a hob for use in milling applications.

## Issues Presented

Whether the district court erred in: (1) refusing to hold the asserted claims invalid; (2) refusing to hold the patents unenforceable; (3) denying increased damages and attorney fees; and (4) enjoining Stora's "successors in interest and assigns".

## OPINION

### (1) Validity

■ To meet its burden at trial, Stora was required to prove by clear and convincing evidence facts compelling a conclusion of invalidity. *See Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320, 323-24, 227 USPQ 838, 840-41 (Fed.Cir.1985). To meet its burden on appeal, Stora must persuade this court that the district court committed reversible error in determining that it had failed to meet its burden at trial. It must do so by convincing us that the court's probative findings underlying its holdings on validity were clearly erroneous or that its legal conclusions on that issue cannot be supported by those findings or are incorrect as a matter of law. *Atlas Powder Co. v. E.I. DuPont De Nemours*, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir. 1984).

### A. Claim 30 of the '518 Patent

■ The district court properly noted that Stora failed to proffer prior art more pertinent than that considered by the PTO and therefore had the "added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359, 220 USPQ 763, 770 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). That deference merely recognizes the statutory mandate that all patents shall be presumed valid. 35 U.S.C. § 282; *see Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555, 225 USPQ 26, 31 (Fed.Cir.1985).

The court appropriately gave weight to two PTO Board of Appeals (Board) decisions on the application that related to that

on which the '518 patent issued. The Board there resolved issues pertinent to those presented to the district court in this case. *See In re Holtz*, 224 USPQ 714 (Bd. App.1984) (materiality of uncited art); *In re Holtz*, Appeal No. 470–30 (Bd.App. Aug. 6, 1981) (unpublished) (obviousness). Stora fully participated since 1976 in the PTO proceedings that led to those decisions. Because both sides agreed at trial that the PTO's decisions should be accorded "great weight by the court," Stora's assertion on appeal that the district court gave undue deference to the PTO decisions comes with poor grace.

### (a) Anticipation

■ Stora says the district court should have found claim 30 anticipated under § 102 by the disclosure in U.S. Patent No. 3,150,444, issued September 29, 1964 to Orville W. Reen (Reen patent). Relying principally on figure 2 of the Reen patent, Stora says that figure can be scaled and the carbide particles it shows can then be measured at three microns or less. Stora, however, must show that each element of the claim is found in that single prior art reference. *Kalman ' v. Kimberly-Clark Corp.*, 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). The corollary of that rule is that absence from the reference of any claimed element negates anticipation. *Atlas Powder Co.*, 750 F.2d at 1573–74, 224 USPQ at 411. The district court found no anticipation. That finding is reviewed under the clearly erroneous standard. *Id.*

The district court found, as had the PTO, that nothing in the Reen patent discloses the actual size of the carbides, 594 F.Supp. at 1255, 226 USPQ at 40, and Stora has not shown that finding to have been clearly erroneous. That a defendant may when sued so measure a photograph as to match one limitation relating to size does not establish anticipation. In all events, the district court found that the Reen patent fails to disclose other elements, i.e., chemical inhomogeneity, inability to achieve full density without sacrificing fine carbide size, and

Stora has not shown that finding to have been clearly erroneous.

### (b) Obviousness

Stora says the district court made erroneous findings and misapplied the law under 35 U.S.C. § 103, even though the court cited *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). More specifically, Stora contends that the district court: (i) considered and discussed only the process disclosed in the '518 patent, not the product set forth in claim 30; (ii) failed to ascertain differences between the invention set forth in claim 30 and the prior art; (iii) failed to find the level of ordinary skill; and (iv) gave undue weight to the objective evidence because it bore no nexus with the claimed invention.

### (i) Process

Stora builds its first argument on one sentence in the court's opinion in which it called the invention a "method and process." On the presence of that single sentence, Stora says attributes of method claims in the '518 patent were "brought into play to save claim 30."

■ In its focus on the phraseology in the court's opinion, Stora reflects its failure to appreciate the appellate function. This court reviews judgments, not phrases. *Fromson*, 755 F.2d at 1556, 225 USPQ at 31. To be relevant on appeal, phrases in a trial court's opinion must be shown not only to have been used in error, but must be shown to have served as the basis of the judgment appealed from. Stora makes no such showing. On the contrary, Stora simply disregards references by the district court to the claimed invention as a product. Much testimony on both sides related to whether the processes of the prior art would result in a product having the properties of the alloy body claimed, and the court was led thereby to discuss processes in its opinion. That fact does not establish, however, that the court based its judgment on the view that the invention of claim 30 was a process.

### (ii) Differences

Stora's principal prior art references are: the Reen patent; *Progress Report on Hot Forging Prealloyed Metal Powders*, 10 Precision Metal Molding 38 (Nov. 10, 1952) by Lambert H. Mott (Mott); and British Patent No. 781,083 issued August 14, 1957 to Gregory J. Comstock (Comstock).

Stora urges this court to find that the Reen patent disclosed temperatures similar to those disclosed in the '518 patent and that therefore Reen need not have included a warning against carbide growth. We are also asked, as was the district court, to reexamine the figure in Reen and measure the size of carbide particles in the figure.

■ The role of this court on appeal from a judgment of a district court is not that of an examiner considering a claim in an application in light of the prior art. *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1558–59 (Fed.Cir.1986). Here, a patent has issued, a trial has been conducted on 18 dates, much testimonial and documentary evidence has been received and evaluated by a district judge. Assuming *arguendo* that Stora's and the district court's factual interpretations of the prior art were equally permissible, that circumstance would avail it nothing on appeal, for when there are two permissible views of the evidence, the factfinder's choice between them *cannot* be deemed clearly erroneous. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Stora must on appeal establish not only that its view is permissible but that that of the district court is clearly in error.

■ As all too frequently occurs on appeal, Stora limits its discussion to evidence that tends to support its view, largely ignoring the contrary evidence accepted by the district court. Particularly ignored are the district court's credibility determinations. That approach cannot of itself establish that the district court's findings were clearly erroneous. *See American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 462–63, 227 USPQ 299, 300–01

(Fed.Cir.1985). "Determining the weight and credibility of the evidence is the special province of the trier of fact." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606, 214 USPQ 1, 7 (1982).

At trial, Crucible's main witnesses, Mr. Neumeyer and Dr. Tien, testified that the prior art produced inferior cutting tool steels. Neumeyer said Comstock did not attain full density or fine carbides. He added that one practicing the subject matter of the Reen patent would be unable to achieve full density without sacrificing fine carbide size. Dr. Tien stated that Mott dealt with structural alloys from which satisfactory cutting tools could not be produced. That the district court credited that testimony is reflected in its statement:

> We have considered all of the prior art references cited by [Stora] with special attention to those primary sources; i.e., Mott, Comstock and Reen I, and [have] concluded that no prior inventor was able to achieve the requisite combination of high density and finely dispersed carbides necessary to the production of top quality high speed tool steel. Indeed, no prior inventor even regarded such a combination as theoretically possible.

594 F.Supp. at 1257, 226 USPQ at 42 (footnote omitted).

The district court credited the testimony of Mr. Neumeyer and Dr. Tien, and rejected that of Stora's witness, Dr. Lawley. On this record, Stora has shown no "basis on which this court could engage in the normally inappropriate process of substituting a contrary credibility determination for that of the district court." *Windsurfing International, Inc. v. AMF Inc.,* 782 F.2d 995, 999, 228 USPQ 562, 565 (Fed.Cir.1986); *see Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1514, 220 USPQ 929, 937 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

Moreover, the district court met Stora's contentions head-on, rejecting, for example, its argument that Reen did not have to warn against carbide growth. The district court correctly found, as had the PTO board, that "neither Reen nor Comstock even cautions against carbide growth at elevated temperatures." 594 F.Supp. at 1257 n.9, 226 USPQ at 42 n.9. Indeed, the Reen patent says, "generally the longer the time and higher the temperature, the higher the density of the sintered strip." Comstock, notwithstanding actual knowledge of Mott's carbide size discussion, advises the use of "as high a temperature as possible without melting." Thus, the inventor achieved the invention set forth in claim 30 by doing what those skilled in the art suggested should not be done, i.e., using lower temperatures, a fact strongly probative of nonobviousness. *W.L. Gore & Associates v. Garlock, Inc.,* 721 F.2d 1540, 1552, 220 USPQ 303, 312 (Fed.Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

Lastly, the district court's determination that until the disclosure in the '518 patent became available no one could produce the combination of full density and fine carbide size found in the invention set forth in claim 30, and its determination that the limitation to carbides of less than three microns was not, in view of that fact, essential to its nonobviousness conclusion, are fully supported in the record. *See Gardner v. TEC Systems, Inc.,* 725 F.2d 1338, 1345–46, 220 USPQ 777, 783–84 (Fed. Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984).

In arguing that the district court failed to ascertain the differences between the invention set forth in claim 30 and the prior art, Stora has failed to carry its burden on appeal.

### (iii) Level of Skill

Stora's contention that the district court committed legal error when it did not find a specific level of skill in the art is equally without merit. In its opinion, the court said "no prior inventor even regarded [the '518 patent] combination as theoretically possible." 594 F.Supp. at 1257, 226 USPQ at 42. In denying a stay of the injunction pending appeal, the court indicated that it had considered the skill of

prior inventors, rendering it unnecessary to find some other level of skill:

> In other words, it was not obvious to *anyone* at *any* level of skill in the art prior to [the '518 patent]. Any further reference, finding, or definitions of level of skill in the art, in view of [the finding that no inventor thought the invention of claim 30 theoretically possible,] would have been superfluous.

226 USPQ at 843 (emphasis in original).

The primary value in the requirement that level of skill be found lies in its tendency to focus the mind of the decisionmaker away from what would presently be obvious to that decisionmaker and toward what would, when the invention was made, have been obvious, as the statute requires, "to one of ordinary skill in the art." 35 U.S.C. § 103; *see Polaroid Corp., supra,* at 1558.

This court has noted instances in which a particular level of skill finding did not improperly influence the ultimate conclusion under § 103. One such instance involved a determination that an invention would have been *obvious* to one of the *lowest* level of skill, i.e., that of a layman. *See, e.g., Union Carbide Corp. v. American Can Corp.,* 724 F.2d 1567, 1573, 220 USPQ 584, 589 (Fed.Cir.1984); *Chore-Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774, 779, 218 USPQ 673, 676 (Fed.Cir.1983). Another involved a determination that an invention would have been *nonobvious* to those of *extraordinary* skill, i.e., other inventors in the art. *See Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 454, 227 USPQ 293, 297–98 (Fed.Cir.1985); *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1454, 223 USPQ 603, 614 (Fed.Cir.1984).

■ To establish reversible error based on a level of skill finding, it must be shown that that finding led to error in the ultimate conclusion. Stora was not in this case prejudiced by the district court's having looked to other inventors, rather than one of ordinary skill. Stora wastes the time of all concerned in arguing that the district court's treatment of the level of skill constituted reversible error.

### (iv) Objective Evidence

As the district court noted, the parties stipulated that the properties of the product set forth in claim 30 have led to substantial commercial success for Crucible and Stora. 594 F.Supp. at 1258, 226 USPQ at 43. Incredibly, Stora attempts on appeal to denigrate that commercial success.

Stora says, without citation to the record, that there is no nexus because powder metallurgy high speed tool steels did not emerge on the market until about 1970, years after the filing date of the application that matured into the '518 patent, that substantial sales were not realized until about 1975, two years after the '518 patent issued, and that some old features contributed to commercial success.

■ Apart from Stora's apparent and disquieting effort to renege on its stipulation, Stora is wrong on the law. Mere passage of time may not be enough to discredit nexus with commercial success. *Windsurfing International,* 782 F.2d at 1000, 228 USPQ at 565 ("Absent some intervening event to which success must be attributed, the delay in achieving the great commercial success of the claimed invention in this case does not detract from the probative value of the evidence of that success."). Stora has shown no basis whatever for its attack on the relevance of the commercial success which resulted, as Stora stipulated, from the properties of the invention.

Moreover, the district court attributed proper weight to the other objective evidence in this case, i.e., filling of a longfelt and unsolved need, failure of others, and wide acceptance and recognition of the claimed invention. Stora stipulated to that evidence and has not on appeal attempted to renege on that part of its stipulation.

### Conclusion on Nonobviousness of the Invention Set Forth in Claim 30

■ Stora having failed to discharge its burden on appeal, the portion of the judg-

ment based on the conclusion that the invention set forth in claim 30 of the '518 patent would not have been obvious must be affirmed.

### B. Claim 4 of the '934 Patent

#### (a) Anticipation

Before the district court, Stora argued that Crucible's attempt to provoke an interference between the '934 patent and the application disclosure that resulted in the '518 patent, and Crucible's accompanying "same invention" arguments, were proof that the latter anticipated claim 4 of the '934 patent.[7] Crucible countered with the PTO's refusal to declare the interference.

The district court correctly determined that the events relating to the interference were not controlling because Crucible admitted that size change uniformity is inherent in the alloy disclosed in the '518 patent. The district court found, however, that inherency of size change uniformity was alone insufficient, because "the existence of this inherency alone of merely one element of the claimed invention, does not fulfill the strict requirements of anticipation." 594 F.Supp. at 1262, 226 USPQ at 46.

Stora admits the correctness of the district court's finding that the '518 patent does not disclose hobs. That fact is itself sufficient to require affirmance of the district court's determination that the '518 patent does not anticipate claim 4 of the '934 patent.

#### (b) Obviousness

The district court distinguished Comstock, Frehser, *Antitropic Dimensional Changes due to Heat Treatment of Ledeburitic Chrome Tool Steels* (Frehser), and Lement, *Distortion in Tool Steels* (Lement), finding that that prior art disclosed processes and alloys all of which failed to achieve the properties produced by the process disclosed in the '934 patent. The court

said that Comstock failed to "attain full, or substantially full, density *and* uniformly distributed fine carbide particles," and that Frehser and Lement did not "even [consider] the production of tool steel through a powder metallurgy process." 594 F.Supp. at 1263, 226 USPQ at 47.

With respect to the prior art represented by the '518 patent, the district court said:

The principal benefit of the ['934] process is its elimination of the out-of-roundness traditionally characteristic in past methods of producing hobs. This, as we previously noted, is achieved through a hardening treatment phase which maximizes size change uniformity, a property particularly essential for hobs because of the reduction of out-of-roundness and resultant increased dimensional stability. While we find that [the '518 patent] is limited to cutting tools, the ['934 patented] process is [sic, would have been] not obvious.

594 F.Supp. at 1263, 226 USPQ at 47.

After evaluating all of the prior art and the objective evidence, the court concluded that the '934 "process is [sic, would have been] not only nonobvious, but appears to be [sic, have been] revolutionary in its elimination of dimensional instability in hobs." *Id.*

Stora argues that the district court focused on the process disclosed and not on the product claimed in the '934 patent. When Stora made the same argument in connection with its motion to stay the injunction, the district court responded that Stora had argued that similarities in the processes evidenced obviousness in the resulting products, and that the court employed "process" in responding to those arguments of Stora. The court also pointed to the reference in its opinion to the invention of the '934 patent as a "powder metallurgy hob, a cutting tool." 226 USPQ at 843. In addition, the court began its initial opinion with the statement that both patents "protect powder metallurgy cutting

---

7. Though the '518 patent issued after the '934 patent, it is prior art because the application on which it issued was filed earlier. 35 U.S.C. § 102(e); *see Hazeltine Research, Inc. v. Brenner*, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304, 147 USPQ 429 (1965).

tool products." 594 F.Supp. at 1250, 226 USPQ at 37.

The burden of proving facts requiring a conclusion of invalidity was on Stora. Having adopted at trial a strategy and tactic involving comparison of the processes disclosed in the prior art and the '934 patent, Stora now seeks to change horses. That it cannot do. First, it would simply be unfair to re-run the race. Second, Stora has not shown that the differences found in the processes by the district court would not serve to produce corresponding differences in the claimed product.

Nor has Stora shown that reversible error resides in the district court's failure to expressly find, as Stora asserts, that the only difference between the invention set forth in claim 4 and the '518 patent disclosure is a hob. The evidence cited in Stora's brief was fully considered by the district court and no basis appears for a conclusion that the court did not fully consider that evidence.

In sum, Stora simply failed to prove at trial facts requiring a conclusion that one skilled in the art and having the disclosure of the '518 patent before him would have found it obvious to have made the invention set forth in claim 4 of the '934 patent at the time it was made.

■ Stora bases a major argument on the undisputed fact that size change uniformity is an inherent property of the alloy disclosed in the '518 patent. That argument is unpersuasive when confronted by Stora's failure to establish at trial that that inherency would have been obvious to those skilled in the art when the invention of claim 4 was made. Inherency and obviousness are distinct concepts. *W.L. Gore & Associates v. Garlock, Inc.*, 721 F.2d 1540, 1555, 220 USPQ 303, 314 (Fed.Cir. 1983) (citing *In re Spormann*, 363 F.2d 444, 448, 150 USPQ 449, 452 (1966)), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

Similarly, Stora's argument that the district court failed to give full import to Crucible's disclaimer of claims 1 and 2 is without merit. First, it is based on conjecture respecting Crucible's reasons for the disclaimer (i.e., that Crucible recognized invalidity of those claims). Second, it ignores the statutory provision that each claim must be separately presumed valid. 35 U.S.C. § 282. Third, as previously noted, claim 4 includes all of the limitations of claims 1 and 2 and must be viewed as though it had originally been an independent claim.

### Conclusion on Nonobviousness of the Invention Set Forth in Claim 4

■ We have considered each of Stora's other arguments touching on the district court's validity conclusion and find them without merit. Because Stora has not discharged its burden on appeal, the portion of the judgment based on the conclusion that the invention set forth in claim 4 of the '934 patent would not have been obvious must be affirmed.

### (2) Inequitable Conduct

■ The district court correctly determined that Stora had waived its inequitable conduct defense to validity at trial. 594 F.Supp. at 1264–65, 226 USPQ at 48; *see also* 226 USPQ at 844. Stora reserved that matter only as possible support for attorney fees in the event it prevailed before the district court. Having waived the assertion at trial, Stora may not resurrect it on appeal. *Cf. Laitram Corp. v. Cambridge Wire Cloth Co.*, 785 F.2d 292, 295, 228 USPQ 935, 937 (Fed.Cir.1986) (allegation of fraud cannot be raised for the first time in this court). Moreover, in its supplemental opinion, the court expressly found that the Comstock patent was not material and that Stora had therefore failed to carry its burden on inequitable conduct. 226 USPQ at 847. That finding has not been shown to have been clearly erroneous.[8]

---

8. Stora's allegation that Crucible's failure to cite the Comstock reference to the PTO constituted inequitable conduct was also rejected by the PTO. *See In re Holtz,* 224 USPQ 714 (Bd.App. 1984).

### (3) Increased Damages—Willful Infringement

In its cross-appeal, Crucible argues that the facts found by the district court mandated an ultimate finding of willful infringement and that such a finding would "[compel] an award of increased damages and attorney fees." The court did not make an express finding on whether Stora's infringement was or was not willful, but limited itself to saying it was unpersuaded that "the evidence including Dr. Hellman's memorandum is sufficient to constitute a basis for treble damages."

The underlying facts are undisputed, and the sole question at this point is whether an ultimate finding of non-willful infringement would be clearly erroneous in light of those underlying facts. If we determine that a finding of non-willfulness would be clearly erroneous, and that a finding of willfulness is dictated by the undisputed underlying facts, we do not thereby engage in *de novo* fact finding, for there are only two possibilities: the infringement here was either willful or it was not. If a finding that it was not would be clearly erroneous, the only alternative is a finding that it was. In that circumstance, a remand to the district court for the purely ministerial task of entering a necessary and foreordained finding serves no useful purpose and merely wastes judicial resources.

Before the district court, Crucible relied mainly on a February 5, 1973 internal memorandum of the chief technical expert of Stora, Dr. Hellman. The memorandum was written after a meeting between Crucible and Stora officials, during which Crucible warned Stora that its products would infringe certain allowed claims, before issuance of the '518 patent, and long before Stora commenced its infringement in the United States. The memorandum read:

> *Summary:*
>
> Crucible maintains that additional patent claims, based on an old patent application, have now been approved in the *USA* and that these patent claims are so worded that we are infringing on them by selling ASP-steel in the USA. We have for now no possibilities for checking this, but must as a matter of course proceed [on the assumption] that it is true. A new search for ~~oppositions~~ prior art has been started and the material that has come to hand will be evaluated at the latest by April 15th. If enough solid ~~oppositions~~ prior art are found by them, we can bring an action against Crucible and begin to sell ASP-steel in the USA. If the new patent claims, on the other hand, should be judged to be ~~tenable~~ valid, we will be closed out of the American market for the foreseeable future.
>
> \*    \*    \*    \*    \*    \*
>
> In the USA and Canada, the conditions are more difficult than in other countries because of differences in the patent laws. In these other countries, we will sell ASP-steel without waiting for the results of the respective reports.
>
> \*    \*    \*    \*    \*    \*
>
> "Stevens" USPat 3.561.934 All the claims refer to: (As) an *article* of manufacture, a metal body constructed of compacted particles of high speed tool or die steel composition. This protects, in other words, the product and he who imports such products to the USA infringes [on the patent]. We are of the opinion in the meantime, that the patent is *not tenable*. See the special memo on this.
>
> \*    \*    \*    \*    \*    \*
>
> Crucible made it fully clear that they will sue us for patent infringement as soon as they detect that we have begun to sell ASP-steel in the USA. Apparently they have given the same information to our potential customers in the USA. Further, they notified us that at least for the present they do not intend to sell licenses to anybody. If their product is successful, the American authorities can eventually force them to sell licenses to at least one company which is in a position to make a similar product. This possibility is, in the meantime, unsure

and lies a long way in the future. On the other hand, Crucible declared itself willing to discuss a license agreement which would only cover Sweden (!) a suggestion which was not answered.

American courts have divergent attitudes toward patents and if this question goes to court, it is important that we take the initiative so that we can choose the right court.

Up to now our efforts have naturally been concentrated on preparations to get the Stevens-patent declared invalid. The following *measures* are being taken now with the above mentioned new patent claims in mind:

1) Search for ~~oppositions~~ prior art in the American Patent Office (Curtis, Morris & Safford).

2) Search for ~~oppositions~~ prior art in the remaining patent literature (patent section, Falun).

3) Search for ~~oppositions~~ prior art in the technical literature (lab., Soderfors).

4) Evaluation of the found material. Shall be finished by April 15, 1973 at the latest.

Here, as in the other patent questions, we will work together with ASEA. In all likelihood, we will also turn to IIB (The International Patent Institute in The Hague) for certain types of research.

If the evaluation gives the right result, we will request a "declaratory judgment action ~~(sie)~~"; that is, we will request that the Stevens-patent be declared invalid. The same measures will be taken against the new Holtz claims as soon as they are made public. As soon as we have filed the former suit, we can begin to sell ASP-steel in the USA but until then we must lie low. This will not involve any noteworthy delay in the introduction of ASP-steel as we must first build up a stock.

During the search for oppositions, we will not come to find directly lethal mate-

rial, but instead we have to concentrate on finding 2 or at most 3 documents which taken together make it "obvious to the professional" that good powder steel can be made and how. An eventual trial will come to be decided on the credibility of the experts' testimony. Our American patent lawyer has guessed at the time and cost for such an action if a compromise were not to be reached: A judgment in the district court will in all likelihood take around two years and the costs will certainly be $50,000, perhaps up to $100,000 dollars, of which the main part will be spent at the beginning of the action and when the trial itself begins. After the appeal to the court of appeals, the judgment will be delayed a further 6–12 months and the costs will rise by 10 to 15 thousand dollars. We must count on having to pay our costs irrespective of the outcome. The damages that we can be assessed if we lose has been guessed to be 5 or possibly up to 10% of the value of the sales.

If the evaluation of the forthcoming oppositions prior art should indicate that the new patent claims in the Holtz application are valid, then the American market is closed to us for the foreseeable future.[9]

\*   \*   \*   \*   \*   \*

The district court found that the memorandum: (1) was based on Stora's assumption that it would be infringing the allowed claims, as to which assumption Dr. Hellman stated "we have no possibilities for checking...."; (2) assumed the patents valid and infringed and merely "charted a strategy to check patent validity; contest patent validity; and, in the process, to get [Stora's] products into the United States market;" and (3) "assessed the costs and prospects of litigation upon the further assumption that 'the evaluation give the right result.'" 594 F.Supp. at 1264, 226 USPQ at 48.

---

9. The quoted paragraphs are reproduced exactly as they appear in the translation set forth in the appendix.

The district court also refused to award treble damages because it found that Stora litigated close patent issues saying those issues "presented substantial questions upon which there has been genuine debate and honest disagreement...." 594 F.Supp. at 1264, 226 USPQ at 48. The court noted that awards of treble damages might "thwart good faith efforts to contest patent validity." *Id.* (citing *Yoder Brothers, Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1383, 193 USPQ 264, 296 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977)). The court noted also that when Crucible told Stora of the patents, Stora replied that the patents were invalid in view of Comstock and a 1964 Holtz article. Concluding that Crucible had not overcome Stora's claims of good faith, the district court mistakenly referred to § 284 instead of § 285 in its refusal to "find this to be such an 'exceptional case' under 35 U.S.C. § 284 (1982) [sic], to justify the award of treble damages." 594 F.Supp. at 1264, 226 USPQ at 48.

■ That the district court declined to impose increased damages that *may* accompany a finding of willful infringement does not mean that the court found the infringement not willful. *See, e.g., S.C. Johnson & Son, Inc. v. Carter Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). Though the parties have proceeded on appeal as though the district court had found Stora's infringement not willful, all the district court decided was that it would not award treble damages. It appears that the court felt that if it found Stora's infringement willful it would have been required to award treble damages. If that be so, it may be said that the court implicitly found Stora's infringement not willful. If that implicit finding was made, it was clearly erroneous.

The district court did not have before it, of course, the guidance on the law of willful patent infringement provided by this

court since the time of the trial. In *Underwater Devices Inc. v. Morrison-Knudsen Co. Inc.* 717 F.2d. 1380, this court stated:

> Where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. Such an affirmative duty includes, *inter alia,* the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity. [Citations omitted.]

At 1389–90, 219 USPQ at 576 (emphasis in original).[10]

■ Though it is an important consideration, not every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986) (court "should always look at the totality of the circumstances"). Conversely, that an opinion of counsel was obtained does not always and alone dictate a finding that the infringement was not willful. *See, e.g., Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 656, 225 USPQ 985, 989 (Fed. Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985); *Central Soya Co. v. George A. Hormel & Co.,* 723 F.2d 1573, 1576–77, 220 USPQ 490, 492–93 (Fed. Cir.1983). In the present case, the totality of the circumstances, including the failure to seek advice of counsel, makes any finding of non-willfulness clearly erroneous and compels the only alternative finding, i.e., that Stora's infringement was willful.

On the undisputed facts of record, an ultimate finding that Stora's infringement was not willful would be "incompatible with the applicable findings [the court] clearly articulated" and would thus, as above indicated, be clearly erroneous. *CPG Products Corp. v. Pegasus Luggage, Inc.,* 776 F.2d 1007, 1015, 227 USPQ 497,

---

**10.** The determination referred to includes, of course, one on validity, there being no liability     for infringement of invalid claims.

502 (Fed.Cir.1985). Stora has not shown to have been clearly erroneous the underlying findings (e.g., that Stora proceeded with its infringement on the assumption, as stated in the memorandum and found by the district court, that the patents were valid and would be infringed). Those findings fully support the present determination that an ultimate finding of non-willfulness would be clearly erroneous.

Stora has not even asserted that it sought advice of counsel when notified of the allowed claims and Crucible's warning, or at any time before it began this litigation. Stora's silence on the subject, in alleged reliance on the attorney-client privilege, would warrant the conclusion that it either obtained no advice of counsel or did so and was advised that its importation and sale of the accused products would be an infringement of valid U.S. patents.

■ The internal memorandum of Dr. Hellman, a non-lawyer, clearly shows that Stora intentionally undertook the risk of importing infringing products in the hope that a court would hold the patent invalid, or that Crucible would grant a license to escape litigation. The '518 patent issued almost a full year before Stora began its infringement in the United States. The district court's characterization of the memorandum as "merely [evidencing] an aggressive strategy of contesting patents" may relate to a reason for infringing; it cannot serve as a basis for finding Stora's infringement not willful. That Stora's officials told Crucible, as part of that "strategy", that they thought the patents invalid in view of certain prior art cannot substitute for the advice of competent counsel before the onset of infringement and is contrary to Stora's own internal memorandum.[11]

■ If infringement be accidental or innocent, increased damages are not awardable for the infringement. If infringement be willful, increased damages "may" be awarded at the discretion of the district court, and the amount of increase may be set in the exercise of that same discretion.

Our indication that Stora's infringement must on this record be found willful does not, therefore, mandate an award of increased damages. The district court has not determined whether, if Stora's infringement were found willful, it would deem increased damages appropriate. Nor has it determined what level of increase, if any, would be appropriate. We therefore express no view on whether the district court, in the exercise of its discretion, should or should not award increased damages as a part of its determination of the damage issues it reserved for later trial. *See CPG Products Corp.*, 776 F.2d at 1015, 227 USPQ at 502.

*(4) Attorney Fees*

■ Having determined that this case was not "exceptional", the district court declined to award treble damages and did not mention either § 285 or attorney fees *per se.* Willfulness of infringement relates to the accused infringer's conduct in the marketplace. Because that conduct may be seen as producing an unnecessary and outcome-certain law suit, it may make the case so exceptional as to warrant attorney fees under § 285. Similarly, bad-faith displayed in pretrial and trial stages, by counsel or party, may render the case exceptional under § 285.

■ When a court declines to award attorney fees on the basis of a determination that a case is not exceptional, the fact findings underlying that determination are reviewed under the clearly erroneous standard. When the determination is that a

---

11. We do not here evaluate Stora's strategy. An aggressive strategy may or may not be a factor in a decision to deny or award increased damages. An "aggressive strategy" unsupported by any competent advice of counsel, thorough investigation of validity and infringement, discovery of more pertinent uncited prior art, or similar factors, is the type of activity the refer-

ence in the patent law to increased damages seeks to prevent. An alleged infringer who intentionally blinds himself to the facts and law, continues to infringe, and employs the judicial process with no solidly-based expectation of success, can hardly be surprised when his infringement is found to have been willful.

case is exceptional, the election to grant or deny attorney fees is reviewed under the abuse of discretion standard. *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir.1985).

We join the district court's concern that awards of increased damages and attorney fees not be allowed to thwart efforts to challenge the validity of patents believed in good faith to be invalid. A party who has obtained advice of competent counsel, or otherwise acquired a basis for a *bona fide* belief that a patent is invalid, can be said to serve the patent system in challenging that patent in a law suit conducted fairly, honestly, and in good faith. Such a party should not have increased damages or attorney fees imposed solely because a court subsequently holds that belief unfounded, particularly when the issues may be fairly described as "close".

As above indicated, a court may find that in all the circumstances an infringement was so willful as to justify a determination that a case is exceptional, and a court may thereupon exercise its discretion to award attorney fees to the patentee. *See Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 455, 227 USPQ 293, 298 (Fed. Cir.1985); *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 667, 206 USPQ 481, 498 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Because there is here no express finding on whether Stora's infringement was so willful as to render the case exceptional, we leave the question in the present case to the district court's determination and discretion in conjunction with the reserved damage trial.

Respecting other possible bases for awarding attorney fees, the district court, in discussing treble damages, found that Stora's claims of good faith were not overcome by the evidence, and that the patent validity issue presented substantial questions on which there had been honest disagreement in the PTO and at trial. Those findings would be applicable in considering a request for attorney fees under § 285. Because the district court did not expressly award or refuse attorney fees under § 285, there is no basis for this court's review of those findings. There having been no denial of attorney fees *per se* under § 285, we leave that question also to such further proceedings as the district court may deem appropriate.

### (5) The Injunction [12]

It is undisputed that Kloster was created immediately after conclusion of the trial and long before judgment, and that, before the court's decision, it purchased the facility Stora used to manufacture the products found to infringe. There has been no determination that Stora divested itself of its facilities for producing infringing products for the purpose of evading the effect of any possible injunction. Nor has it been determined that Kloster's effort to evade the injunction was for the purpose of gaining freedom to continue the infringement and force Crucible to a second lawsuit. Such purposes would of course not reflect the highest ethical standards of either the business community or the legal profession.

On September 4, 1984, i.e., fifteen days before the district court issued its opinion, Crucible moved to join Kloster as a party pursuant to Fed.R.Civ.P. 19(a) and 25(c).[13]

The court's opinion issued September 19, 1984, indicated that infringement by Stora and its "successors in interest and assigns" would be enjoined. On October 5, 1984, Kloster appeared at a status conference and argued that it should not be joined as a

---

12. The injunction reads:

Each of the defendants, their officers, agents, servants, employees, successors in interest and assigns, and any other person, corporation, or organization acting in concert with them is hereby permanently enjoined and restrained during the life of the respective U.S. patents identified above from the making, using or selling of products infringing claim 30 of U.S. Patent No. 3,746,518 or claim 4 of U.S. Patent No. 3,561,934, and from inducing or contributing to the making, using or selling of such products.

13. Kloster at no time sought to intervene under Fed.R.Civ.P. 24(a).

party and that "successors in interest and assigns" should be deleted from the proposed injunction. On October 11, 1984, the court issued its injunction enjoining infringement by Stora and its "successors in interest and assigns." The court deemed it unnecessary to decide the joinder question. Kloster moved to modify the injunction by deleting "successors in interest or assigns" or by specifically excluding Kloster. In denying the motion, the court cited *Regal Knitwear Co. v. National Labor Relations Board*, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945) as authority for its use of "successors in interest and assigns." 226 USPQ at 846.

▮▮▮▮ Kloster was not a party when the judgment was entered. Nonetheless, because it must be deemed a successor in interest or an assign, it is bound by the injunction and may for that reason appeal the refusal to modify it. *See* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.06, at 3–23 (1985); *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 108–112, 89 S.Ct. 1562, 1568–1570, 23 L.Ed.2d 129, 161 USPQ 577, 580–82 (1969); *see also United States v. LTV Corp.*, 746 F.2d 51, 53–54 n. 5 (D.C. Cir.1984).[14]

Kloster attempted to carry water on both shoulders before the district court. It effectively asserted it was not bound, when it contested joinder, declined intervention, and sought specific exclusion. It effectively asserted that it was bound, when it sought modification of the injunction, because absent such assertion Kloster would lack standing to contest the injunction's terms. In all events, the district court correctly intended that Kloster be bound by the injunction.

At the status conference, the court said, "the most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party and the judgment will be binding on his successor in interest, even though he is not named." [15] (Quoting 7A C. Wright & A. Miller, *Federal Practice and Procedure*, § 1958, at 664 (1972); *see also, Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263–64, 225 USPQ 350, 354–55 (Fed.Cir.1985) (joinder merely a determination that transferee's presence would facilitate conducting the litigation)).

On appeal, Kloster says that the district court "sought to evade the limitations" of Fed.R.Civ.P. 65(d)[16] when it inserted "successors in interest and assigns." Kloster quotes from *Regal Knitwear Co.*, 324 U.S. at 14, 65 S.Ct. at 481: "The terms 'successors and assigns' in an enforcement order of course may not enlarge its scope beyond that defined by the Federal Rules of Civil Procedure." Kloster disregards and distorts the thrust of *Regal Knitwear Co.*, in which the Supreme Court affirmed a *denial* of a motion to strike "successors and assigns" and said that "successors and assigns" may *not* be impermissible under Rule 65(d) and *may* be effective to bind those in privity with the defendant. In *Regal Knitwear Co.*, the Court did not have a successor or assignee before it. In *Golden State Bottling Co. v. National Labor Relations Board*, 414 U.S. 168, 177–80, 94 S.Ct. 414, 421–23, 38 L.Ed.2d 388 (1973), it affirmatively held that the successor party there before it was subject to the enforcement order involved, and went on to clarify the absence of conflict between Rule 65(d) and orders binding successors and assigns.

---

**14.** Having neither intervened before the trial court nor argued that Stora is incapable of contesting the merits on appeal, Kloster is without standing to appeal from the judgment on the merits. The brief it filed on the merits has accordingly been disregarded.

**15.** Thus it was not necessary that the court rule on Crucible's motion to join Kloster.

**16.** Rule 65(d) provides:

Every order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

In *Regal Knitwear Co., following* the sentence quoted by Kloster, the Court wrote:

> Successors and assigns may, however, be instrumentalities through which defendant seeks to evade an order or may come within the prescription of persons in active concert or participation with them in violation of an injunction. If they are, by that fact they are brought within the scope of contempt proceedings by the rules of civil procedure.

324 U.S. at 14, 65 S.Ct. at 481. The Court stressed that the emphasis "is not merely to succession, but to a relation between the defendant and the successor which might of itself establish liability within the terms of Rule 65." 324 U.S. at 15, 65 S.Ct. at 481. The relation here is not disputable. Kloster is the successor-operator of Stora assets used to produce infringing products.

Kloster argues, however, that the district court "avoided giving any consideration to the relationship" between Kloster and Stora, did not "find" it in privity with Stora, did not give it a chance to show it was not in privity, and cannot bind it with Stora solely because it purchased Stora's infringing facility, citing an agreement between Kloster and Stora that Kloster accepted no liability for Stora's infringement. Kloster argues that it cannot be bound because it was not a party, disregarding its resistance to Crucible's motion to join it. Private agreements between Kloster and Stora are irrelevant. Kloster also argues that it should be entitled to litigate the case on the merits before being enjoined. The arguments are spurious.

Courts have repeatedly found privity where, after a suit begins, a nonparty acquires assets of a defendant-infringer. *See, e.g., Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 338, 161 USPQ 65, 67 (7th Cir.1969); *J.R. Clark Co. v. Jones & Laughlin Steel Corp.*, 288 F.2d 279, 280, 129 USPQ 97, 98–99 (7th Cir.), *cert. denied*, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 32 (1961); *Alb, Inc. v. Noma Lites, Inc.*, 231 F.2d 662, 663, 109 USPQ 26, 27 (2d Cir. 1956). The applicable reasoning was well illustrated in *J.R. Clark Co.*:

> If a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached.

288 F.2d at 280, 129 USPQ at 98 (*quoting G. & C. Merriam Co. v. Saalfield,* 190 Fed. 927, 932 (6th Cir.1911)).

Nowhere does Kloster appear to recognize that it can avoid the injunction by simply refraining from infringement. That it desires to continue Stora's infringement appears the only possible basis for its strenuous effort to evade the injunction.

The district court's denial of Kloster's motion to modify the injunction is affirmed.

## CONCLUSION

The judgment refusing to hold invalid claim 30 of the '518 patent and claim 4 of the '934 patent, and refusing the inequitable conduct defense, is affirmed. To the extent that the district court's refusal of treble damages rested on an implicit finding that Stora had not willfully infringed, that finding was clearly erroneous, and the request for increased damages and attorney fees is remanded. The denial of Kloster's motion to modify the injunction is affirmed.

**AFFIRMED IN PART AND REMANDED IN PART.**