**TRISTRATA TECHNOLOGY, INC., Plaintiff,**

v.

**ICN PHARMACEUTICALS, INC., Defendant.**

No. CIV.A.01–150–JJF.

United States District Court, D. Delaware.

April 7, 2004.

See also 2004 WL 769357.

Arthur G. Connolly, III, Francis DiGiovanni, Connolly, Bove, Lodge & Hutz LLP, Wilmington, DE, Mayer, Brown, Rowe & Maw LLP, Chicago, IL (Michael O. Warnecke, David R. Melton, Douglas L. Sawyer, of counsel), Kevin M. McGovern, Brian T. Foley, McGovern & Associates, Greenwich, CT, for Plaintiff Tristrata Technology, Inc.

Steven J. Balick, Ashby & Geddes, Wilmington, DE, Hogan & Hartson, LLP, Washington, D.C. (Raymond A. Kurz, Celine Jimenez Crowson, H. Keeto Sabharwal, of counsel), for Defendant ICN Pharmaceuticals, Inc.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Presently before the Court are Defendant ICN Pharmaceuticals, Inc.'s ("ICN") Renewed Motion For Judgment As A Matter Of Law And Motion For A New Trial (D.I.187) and Motion For Reconsideration. (D.I. 189.) For the reasons set forth below, the Motions will be denied.

### BACKGROUND

Tristrata initiated the instant action alleging that ICN's manufacture and sale of various products infringed two of its patents, U.S. Patent Nos. 5,561,157 (the "'157 patent") and 5,665,776 (the "'776 patent"). Following a trial by jury, the jury returned a verdict finding the '157 and '776 patents to be valid and that ICN willfully infringed claims 1, 9, 17, and 25 of the '157 patent and claims 19, 20, and 26 of the '776 patent. By its Motions, ICN moves for 1) reconsideration of the Court's Claim Construction Memorandum Order (D.I.155) and Memorandum Order striking a number of ICN's 35 U.S.C. § 112 defenses (the "Section 112 defenses") (D.I.159); 2) judgment as a matter of law ("JMOL") that it did not willfully infringe and that the '157 and '776 patents are invalid; and 3) a new trial.

### STANDARDS OF REVIEW

### I. Motion For Reconsideration

"As a general rule, motions for reconsideration should be granted 'sparingly.'" *Stafford v. Noramco of Delaware, Inc.*, 2001 WL 65738 at *1 (D.Del. Jan.10, 2001)(quoting *Karr v. Castle*, 768 F.Supp. 1087, 1090 (D.Del.1991)). The purpose of granting motions for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)(citing *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982)). Parties should remain mindful that a motion for reconsideration is not merely an opportunity to "accomplish [the] repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D.Del.1991)(citing *Brambles U.S.A., Inc. v. Blocker*, 735 F.Supp. 1239, 1240–41 (D.Del.1990)). However, a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result. *Id.* (citing *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989)).

## II. Motion For New Trial

 In relevant part, Rule 59 of the Federal Rules of Civil Procedure provides:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). The decision of whether to grant a new trial lies solely within the discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). However, a court should grant a motion for a new trial only when allowing a verdict to stand would result in a miscarriage of justice. *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir.1991). In other words, a court should not disturb a verdict unless the verdict, "on the record, cries out to be overturned or shocks [the court's] conscience." *Id.* at 1353 (citing *EEOC v. Delaware Dep't of Health & Social Serv.,* 865 F.2d 1408, 1413 (3d Cir.1989)).

## III. Judgment As A Matter Of Law

 A court may grant a motion for judgment as a matter of law if, in view of the admitted evidence, no reasonable jury could have decided in the non-moving party's favor. *Walter v. Holiday Inns, Inc.,* 985 F.2d 1232, 1238 (3d Cir.1993)(citing *Indian Coffee Corp. v. Procter & Gamble Co.,* 752 F.2d 891, 894 (3d Cir.1985)). Courts " 'do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.' " *Id.* (quoting *Patzig v. O'Neil,* 577 F.2d 841, 846 (3d Cir.1978)). Further, in evaluating the sufficiency of the evidence, a court must give the non-moving party, "as verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson,* 926 F.2d at 1348 (citing *Simone v. Golden Nugget Hotel & Casino,* 844 F.2d 1031, 1034 (3d Cir.1988)).

## DISCUSSION

### I. ICN's Request For Reconsideration And A New Trial Based On The Court's Memorandum Order Striking ICN's Section 112 Defenses

 In a Memorandum Order dated November 19, 2003, the Court granted in part Tristrata's Motion to Strike a number of ICN's Section 112 defenses from trial. (D.I.159.) By its Motion, ICN requests the Court to reconsider the Memorandum Order striking the Section 112 defenses and to grant it a new trial.

ICN contends that the Court misunderstood the effect of Tristrata's late amendments to its claim charts. ICN contends that Tristrata's late amendments made the Section 112 defenses relevant for the first time because, prior to the change, ICN believed that its products anticipated the '157 and '776 patents. ICN contends that prior to the changes in its claim charts, Tristrata maintained a critical distinction between the terms "enhancing amount" and "enhancing effect," whereby Tristrata asserted that an "enhancing amount" of alpha hydroxyacids ("AHAs") was between .01 and 99 percent in weight. ICN contends that it was not until after the change in the claim charts that it was aware of Tristrata's position that an "enhancing amount" constituted more than a "trace amount" of AHAs, thus requiring its assertion of various Section 112 defenses for the first time.

In response, Tristrata contends that the Court correctly concluded that its change in its claim charts did not unfairly surprise or prejudice ICN. Tristrata asserts that ICN's suggested distinction between "enhancing amount" and "enhancing effect" is nonsense. Tristrata contends that the key claim term is "enhancing," and that it is irrelevant if the term is followed by "effect" or "amount." Tristrata maintains that ICN's representation that it believed that Tristrata interpreted, prior to its changes in the claim charts, the term "enhancing amount" as requiring only trace amounts of AHAs is not supported by either parties' expert reports, exchanged prior to the change in the claim charts, or the experts' and the inventor's testimony at trial.

As an initial matter, the Court is unpersuaded by ICN's contention that it was unfairly surprised by Tristrata's change in its claim charts because ICN previously believed that Tristrata maintained a critical distinction between the terms "enhancing amount" and "enhancing effect." The report by Tristrata's expert, Dr. Weiner, disclosed prior to the change in the claim charts, indicates that Tristrata did not distinguish between "enhancing amount" and "enhancing effect." In paragraphs thirty and thirty-one of his report, Dr. Weiner states:

30. My opinion as to "enhancing amount" and "effective to enhance the efficacy of said first ingredient" in the independent claims of the patents-in-suit is as follows:

31. It is my opinion that a person of ordinary skill in the art would understand these terms to mean any concentration, which is sufficient to trigger a synergistic effect. A synergistic effect is a coordinated or correlated action of two or more agents so that the combined action of the parts is greater than the sum of the whole.

*Id.* at Ex. 3. Thus, contrary to ICN's suggestions, Dr. Weiner's report demonstrates that ICN was on notice of Tristrata's position, prior to the change in the claim charts, that not any trace amount of AHAs would constitute an "enhancing amount."

Moreover, as disclosed in the report by ICN's expert, Dr. Carson, ICN (or at least its expert) believed that Tristrata did not make any such critical distinction. In paragraph ninety of Dr. Carson's report, Dr. Carson asserts that Dr. Weiner is incorrect in:

opin[ing] that the terms 'enhancing amount' and 'effective to enhance' should be interpreted to mean an amount sufficient to trigger a synergistic effect. He is mistaken. The terms 'enhancing amount' and 'effective to enhance' are clinical terms. To those skilled in the art those terms clearly mean an improvement in clinical outcome."

(D.I. 198, Ex. 4 at ¶ 90.) Based on this evidence, the Court concludes that it did not err in finding that ICN was not unfairly surprised by Tristrata's change in its claim charts. The Court finds that ICN was aware of Tristrata's interpretation of the term "enhancing amount," and thus, will deny ICN's request for reconsideration and a new trial due to the Court's November 19, 2003, Memorandum Order.

## II. Whether The Court's Construction Of The Term "Enhancing Amount" Is Invalid As Indefinite

■ ICN contends that the Court's construction of the term "enhancing amount" as "more than any additive effect" is indefinite, and therefore, erroneous because neither the inventor of the '776 and '157 patents, Dr. Yu, nor Tristrata's expert, Dr. Weiner, could quantify the outer limits of what constitutes an enhancing amount of AHAs. Tristrata responds that this issue was fully briefed and decided by the Court

on ICN's Motion For Summary Judgment Of Invalidity. (D.I.93.) Tristrata maintains that all of ICN's arguments are essentially the same as those advanced by ICN in its Motion for Summary Judgment of Invalidity, with the exception that ICN has added the trial testimony of Dr. Yu and Dr. Weiner. Further, Tristrata contends that even if the Court were to revisit the indefiniteness question, under controlling precedent, the term "enhancing amount" is not indefinite.

The Court views ICN's arguments for reconsideration, new trial, and judgment as a matter of law, with respect to the Court's construction of the claim term "enhancing amount," as attempts to avoid the Court's ruling striking ICN's indefiniteness defense. As discussed above, the Court precluded ICN from asserting these defenses because of its failure to provide Tristrata with discovery on a number of its Section 112 defenses. Accordingly, the Court will not permit ICN to avoid the Court's ruling by packaging its indefiniteness arguments in various post trial motions objecting to the Court's claim construction.[1]

Moreover, the Court does not view Dr. Weiner's trial testimony as establishing that the Court's construction of the term "enhancing amount" is indefinite as a matter of law.[2] As required by the definiteness requirement of 35 U.S.C. § 112 ¶ 2, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." In order for a claim to be sufficiently definite, a claim must inform "one skilled in the art [of] the bounds of the

claim when read in light of the specification." *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 705 (Fed.Cir.1998)(quoting *Miles Lab., Inc. v. Shandon, Inc.,* 997 F.2d 870, 875 (Fed.Cir.1993)).

ICN contends that Dr. Weiner's trial testimony establishes that the term "enhancing amount" is indefinite because Dr. Weiner could not "define a minimum enhancing amount of [AHAs] as claimed in the '157 and '776 patents." (D.I. 191 at 18.) The Court concludes that ICN's objections are not meritorious for two reasons. First, the Federal Circuit has held that the use of functional claim terms such as "enhancing amount" or "effective amount" are not indefinite, provided one of ordinary skill in the art could determine the bounds of the claims without undue experimentation. *Geneva Pharm., Inc. v. Glaxosmithkline, Plc,* 349 F.3d 1373, 1383–84 (Fed.Cir.2003); *see also Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091, 1111 (Fed.Cir.2000)("[T]here is nothing wrong with defining the dimensions of a device in terms of the environment in which it is to be used.")(citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1575–76 (Fed.Cir.1986)).

Second, Dr. Weiner testified at trial that one of ordinary skill in the art would understand, upon reading the specifications of the '157 and '776 patents, the boundaries of the claim term "enhancing amount." (D.I. 198, Ex. 2 at 391–99) (stating, and agreeing with the deposition testimony of ICN scientists, that one of ordinary skill would understand that small amounts of AHAs, such as .5 percent,

---

1. The Court is unpersuaded by ICN's objection to the Court's claim construction due to lack of written description for the same reasons.

2. To the extent ICN contends that Dr. Yu's testimony establishes indefiniteness, as the

Court concluded in the Memorandum Order dated November 14, 2003 (D.I.153), the Court views this testimony to be irrelevant to the question of indefiniteness. *See Solomon v. Kimberly–Clark Corp.,* 216 F.3d 1372, 1379 (Fed.Cir.2000).

would not constitute an "enhancing amount." Dr. Weiner, at trial, and ICN's scientists, by video deposition, testified that one of ordinary skill in the art would recognize that small amounts of AHAs would be "salted out" from the formulations, and thus, only serve as a pH adjuster stabilizing the formulation); *id.* at 381–383 (stating that the specifications of the '157 and '776 patents enable one of skill in the art to determine what qualifies as an "enhancing amount" of AHAs).

In sum, the Court concludes that ICN may not resurrect its indefiniteness defense by objecting to the Court's construction of "enhancing amount." Also, the Court does not view Dr. Weiner's trial testimony, relied upon by ICN in its attempt to prove that the claim term "enhancing amount" is indefinite, as establishing indefiniteness.[3]

## III. Whether ICN Is Entitled to JMOL That It Did Not Willfully Infringe The '157 And '776 Patents

■ The jury found, after the close of evidence, that ICN willfully infringed the '157 and '776 patents. ICN objects to this finding and asserts that it is entitled to JMOL that it did not willfully infringe Tristrata's patents.

ICN contends that it is entitled to JMOL that it did not willfully infringe the '157 and '776 patents because formulations of hydroquinone and AHAs have been on the market for decades, and thus, it had a good faith belief that it could make, what it considered to be, obvious variations of its products containing these two ingredients. ICN also maintains that it believed, and still believes, that the patents are invalid because they are obvious in light of the prior art. Further, ICN contends that Tristrata's original construction of the term "enhancing amount," reflected in letters sent by Tristrata to ICN in 1997, 1998, and 2001, demonstrates that ICN had a good faith belief that the '157 and '776 patents were invalid as anticipated. Thus, ICN contends that the Court should conclude, as a matter of law, that it did not willfully infringe Tristrata's patents.

Tristrata responds that the jury correctly found that ICN willfully infringed its patents based on the direct and circumstantial evidence presented at trial. Tristrata asserts that in the face of its evi-

**3.** Further, the Court concludes that ICN is procedurally barred from raising this objection in its post-trial briefing. In its Further Motion For Claim Construction (D.I.98), ICN raised issues that it claims "surfaced" at the deposition of Dr. Weiner. A large portion of Dr. Weiner's deposition included extensive questioning by ICN's trial counsel of Dr. Weiner on his position as to what amounts of AHAs constitute "enhancing amounts." (D.I. 98 at 4.) ICN raised the arguments it puts forth in the instant motion in its Further Motion For Claim Construction, but, did so in arguing that the Court should abide by the ordinary meaning of the term "enhancing." *Id.* (stating that all of Dr. Weiner's examples given during his deposition testimony are "merely ... examples, which may or may not comprise enhancing amounts, and which do nothing to define the term."). Therefore, the Court concludes that ICN should have raised this issue in its prior submissions, and thus, is precluded from seeking reconsideration of the indefiniteness issue. *See Karr*, 768 F.Supp. at 1093 (holding that reconsideration of an issue will be denied when it "should have been presented to the court previously")(citing *Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240–41 (D.Del.1990)). Moreover, even though ICN may now recognize that its previous arguments to the Court that Dr. Weiner, as one skilled in the art, could not "define the term" enhancing amount were better directed to indefiniteness rather than ordinary meaning, the fact that ICN's brief in support of the instant motion is superior to its Further Motion For Claim Construction does not justify reconsideration. *Id.* at 1093 (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)).

dence demonstrating willful infringement, ICN failed to present any rebuttal evidence. In addition, Tristrata contends that ICN's assertion that Tristrata's amendments to its claim charts justify ICN's failure to investigate whether its products infringed Tristrata's patents is "specious."

A finding of willful infringement is based on an evaluation of the totality of the circumstances. *Orthokinetics,* 806 F.2d at 1580. Willful infringement is a question of fact, probing whether an infringer held a reasonable belief that the patent it infringed was invalid, not infringed, or unenforceable. Robert L. Harmon, *Patents and the Federal Circuit* 807 (5th ed.2001). If a potential infringer has notice of another's patents, the potential infringer has an affirmative duty of care. *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944 (Fed.Cir.1992)(citing *Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1566 (Fed.Cir.1988)). This duty generally includes the obligation to seek and obtain a competent legal opinion evaluating potential infringement. *Id.* (citing *Ryco Inc. v. Ag–Bag Corp.,* 857 F.2d 1418, 1428 (Fed.Cir.1988)). However, the failure to obtain a legal opinion does not automatically subject an infringer to a finding of willful infringement. *Ryco,* 857 F.2d at 1428. This is only one factor to be considered among the totality of the circumstances. *Id.* (citing *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1579 (Fed. Cir.1986)).

As an initial matter, the Court concludes that the 1997 and 1998 letters from Tristrata to ICN, notifying ICN of its potentially infringing activities, do not entitle ICN to a JMOL that it did not willfully infringe Tristrata's patents. ICN contends that it did not have notice that its

Glyquin and Glyquin XM products potentially infringed Tristrata's patents because the 1997 letter from Tristrata only addressed ICN's Viquin product. (D.I.209.) The Court concludes that the jury had reasonable grounds to find otherwise because Tristrata introduced at trial ICN's training manual for Glyquin, which included language identical to that found in the '157 and '776 patents, thereby suggesting that ICN knowingly copied and used information in Tristrata's patents.

Next, ICN contends that because the 1998 letter from Tristrata identified ICN's Forte products as potentially infringing (Tristrata Trial Ex. 75), two of which were on the market prior to the filing of the '157 and '776 patents, the jury could not have reasonably concluded that ICN committed willful infringement. Although ICN asserts that it believed, based on the 1998 letter, that Tristrata's patents were invalid as anticipated, ICN points to no testimony or exhibits introduced at trial establishing this alleged belief or that it undertook any investigation to confirm this belief. Therefore, the Court cannot conclude that the 1998 letter would preclude any reasonable jury from finding willful infringement. *See Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1199 (3d Cir.1993)("[I]n reviewing the sufficiency of the evidence with respect to a motion for judgment, [a court] must take the record as presented to the jury."); *Walter,* 985 F.2d at 1238.[4]

Moreover, ICN's assertion that it believed, from 1998 and on, that the '157 and '776 patents were invalid is contradicted by an April 11, 2001, letter sent by ICN's trial counsel to Tristrata. In this letter, which was a response to a letter from Tristrata alleging infringement, ICN's trial counsel stated that he believed

---

**4.** ICN's failure to introduce into evidence the 2001 letter from Tristrata (D.I.202, Ex. 4) similarly precludes the Court from considering this letter as proof that ICN did not willfully infringe Tristrata's patents.

ICN was not infringing because ICN's products did not fall within the claims of the '157 or '776 patents. (D.I.202, Ex. 5.) Although this April 11, 2001, letter only discussed ICN's Glyquin product, at no point does ICN's trial counsel contend that the '157 and '776 patents were invalid as anticipated. *Id.* Accordingly, in addition to the absence of admitted evidence confirming ICN's good faith belief that it was not infringing, the Court rejects, as unsupported, ICN's suggestion that it manufactured and sold its products believing that the '157 and '776 patents were invalid as anticipated.

The Court further concludes that Tristrata introduced evidence sufficient for the jury to properly find that ICN willfully infringed the '157 and '776 patents. As discussed above, the jury could have reasonably concluded that ICN had notice of, and potentially copied portions of, Tristrata's patents. To the extent ICN argues that the Court should conclude that the jury erred in not adopting Dr. Carson's testimony that the Glyquin training manual was not evidence of copying or willful infringement, under the JMOL standard of review, the Court is precluded from second-guessing the jury's evaluation of Dr. Carson's testimony. *LifeScan,* 103 F.Supp.2d at 350. Based on its verdict, the jury clearly chose not to adopt Dr. Carson's testimony that the Glyquin training manual was not probative of the issue of willful infringement.

Also, ICN introduced no evidence at trial that it obtained an opinion letter from counsel establishing its asserted good faith belief that Tristrata's patents were invalid. Thus, the jury could have viewed the absence of evidence proving that ICN obtained legal advice regarding potential infringement as an important factor in its willfulness determination. *See Ortho,* 959 F.2d at 944. Finally, ICN presented no evidence at trial of non-infringement.

(D.I. 206 at 13)(conceding that at trial "ICN did not present a 'non-infringement' defense"). Taken together, the Court concludes that the admitted evidence properly supported the jury's finding of willful infringement. *See Walter,* 985 F.2d at 1238.

## IV. Whether The '157 And '776 Patents Are Invalid As Anticipated Or Obvious

ICN contends that two of its products, Eldoquin and Solaquin, render Tristrata's patents invalid as anticipated or obvious because Eldoquin and Solaquin are composed of the same ingredients (hydroquinone and AHAs), and in roughly the same proportions, as the '157 and '776 patents. ICN also asserts that the trial testimony of Dr. Weiner and Dr. Carson established that Tristrata did not adequately distinguish, as prior art, Eldoquin and Solaquin. ICN maintains that Dr. Weiner testified that the percentages of AHAs, as found in Eldoquin and Solaquin, qualify as "enhancing," and therefore, render Tristrata's patents invalid.

In response, Tristrata contends that the evidence ICN presented at trial did not establish, by clear and convincing evidence, that the '157 and '776 patents were invalid as anticipated or obvious because of Eldoquin or Solaquin. Further, Tristrata contends that the unrebutted evidence of secondary considerations demonstrated that its patents were not obvious.

 Anticipation is a question of fact. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1554 (Fed.Cir.1995)(citing *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 619 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985)). A patent is anticipated under 35 U.S.C. § 102 if a prior art reference discloses each and every element and limitation, either expressly or inher-

ently, of a claimed invention. *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991)(citing *Carella v. Starlight Archery and Pro Line Co.,* 804 F.2d 135, 138 (Fed.Cir.1986)). To find anticipation, there "must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Id.*

■ Pursuant to 35 U.S.C. § 103, a patent is obvious when clear and convincing evidence establishes that "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." Although obviousness is a legal question, its resolution is dependent on four underlying factual inquiries: 1) the scope and content of the prior art; 2) the differences between the claims of the patent at issue and the prior art; 3) the level of skill in the art; and 4) relevant secondary considerations. *Smith Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1354 (Fed.Cir.1999)(citing *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)).

■ The Court concludes that it must deny ICN's request for JMOL and a new trial because the evidence presented at trial properly supported the jury's verdict that the '157 and '776 patents were not anticipated nor obvious. The crux of ICN's argument that Tristrata's patents are invalid as anticipated or obvious is its contention that the trial testimony of Dr. Weiner and Dr. Carson indisputably established that Eldoquin and Solaquin contained "enhancing amounts" of AHAs. However, following a review of the record evidence, the Court concludes that a JMOL of invalidity and a new trial are not warranted.

First, the Court concludes that Dr. Weiner's trial testimony supports the jury's finding that the '157 and '776 pat-

ents were not obvious with respect to, nor anticipated by, Eldoquin and Solaquin. Dr. Weiner testified, as one of ordinary skill in the art, that Tristrata's patents were valid. (D.I. 198, Ex. 2 at 357.) Dr. Weiner also unequivocally testified, contrary to ICN's suggestions, that the percentages of AHAs found in Eldoquin and Solaquin would not constitute an "enhancing amount":

> Q: Dr. Weiner, is there any question in your mind that the 0.5 percent could not be [sic] enhancing amount?
>
> A: It could not be an enhancing amount, I'm 100 percent sure of that.

*Id.* at 501. Dr. Weiner reiterated this position when questioned by ICN:

> Q: ... [D]o you know what the minimum amount of glycolic acid would be that it would still have an enhancing effect?
>
> A: I don't know the exact number but I know it would certainly not be .5 percent
> ....

*Id.* at 473.

To the extent ICN contends that Dr. Carson's testimony compels a different conclusion, the Court is unwilling to substitute its judgment for the jury's apparent crediting of Dr. Weiner's testimony over that of Dr. Carson's. As discussed above, when reviewing a jury verdict on a JMOL, a court is restricted from "evaluat[ing] the credibility of the witnesses." *LifeScan,* 103 F.Supp.2d at 350 (citing *Price v. Delaware Dep't of Correction,* 40 F.Supp.2d 544, 549 (D.Del.1999)); *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed.Cir.1984). Consequently, the Court will not conclude that Dr. Carson's testimony establishes that the '157 and '776 patents are invalid as anticipated or obvious as a matter of law. Accordingly, the Court will deny ICN's Motions for a New Trial or JMOL.

## CONCLUSION

For the reasons discussed, the Court will deny ICN's Renewed Motion For Judgment As A Matter Of Law And Motion For A New Trial (D.I. 187) and Motion For Reconsideration. (D.I.189.)

An appropriate Order will be entered.